UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

JEFFREY S. JONES
and DENISE A. JONES,

Debtors.
_____/

Case No. 07-32488-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

OPINION

This matter is before the Court upon the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3). This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1) and 28 U.S.C. § 151. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

The United States Trustee claims that the Debtors' Chapter 7 should be dismissed after review of the totality of the circumstances as enunciated in *In re Krohn*, 886 F.2d 123 (6th Cir. 1989), and as codified in 11 U.S.C. § 707(b)(3). The Debtors respond by denying the allegations of the United States Trustee, as well as objecting to the relief requested by the United States Trustee.

FINDINGS OF FACT

The Court conducted a hearing on this matter on January 31, 2008. Debtor, Jeffrey Jones, testified that he is currently employed as a project manager for Profit 21. Mr. Jones, as evidenced by the Amended Schedule I, has gross monthly income of $7,673.12 with a take home pay of $5,099.30. One of the deductions from Mr. Jones' wages is a 401k payment of $383.33 per month. Debtor, Denise Jones, receives monthly income of $1,082 for providing home care for family

1

members. The expenses for Ms. Jones' activities appear on Schedule J and explain, in part, some of the higher than expected expenses for this couple. Additionally, the Debtors have three dependents, two of whom are over the age of 18 and the third is a 12 year old daughter living with the Debtors.

Mr. Jones has been employed in various jobs since graduating from Kearsley High School in 1977. For the most part, Mr. Jones has been involved and employed in various computer or technology sales positions and for many years enjoyed an income in excess of $100,000. As testified by Mr. Jones, however, his employment for the last 5 to 6 years has not been steady or constant and there have been a number of job cuts in his industry and within his company, which has been sold a number of times since 2001.

Mr. Jones testified that he realized he and his family were having difficulty making payments on their various obligations. For many months, Mr. and Ms. Jones worked with their credit card companies in an effort to make payments in order to satisfy their obligations to these creditors. The Debtors' efforts did result in the successful forgiveness of debt of approximately $47,000. As Mr. Jones testified, however, the Debtors then faced a significant tax liability for the forgiveness of this debt. For the most part, the amounts paid by the Debtors to their credit card creditors and their taxes came from a 401k account, or monies lent by Ms. Jones' parents. In all, the Debtors have withdrawn approximately $70,000 from Mr. Jones' 401k account to pay their creditors.

Mr. Jones testified that he also has reaped the benefits of debtor education as mandated by Congress. As a result of this debtor education, Mr. and Ms. Jones have reduced certain expenses and have also learned to budget for expenses for home maintenance such as furnace filter replacement and replacement of other household appliances. Per the testimony of Mr. Jones, these expenses have been placed in Schedule J, all consistent with the education that he has received.

Mr. Jones also testified that he realizes, through his debtor education, that the $2,186.13 identified as a mortgage payment in Schedule J is higher than the Debtors can afford. The Debtors have attempted to reduce that amount via negotiations with their secured creditor or refinancing of their house. Mr. Jones testified a financial mistake the Debtors made was in retaining this home when it should have been sold 4 to 5 years earlier. Despite the efforts of the Debtors to either restructure their debt, refinance or sell this house, however, the $2,186.13 mortgage payment still exists. As also testified by Mr. Jones, the Debtors, along with their family, need a house of this approximate size so that Ms. Jones may care for various family members and receive the $1,082 in income.

ANALYSIS

The United States Trustee correctly points out that the Debtors are higher income Debtors and that at first blush do not appear to be in need of Chapter 7 relief. The Court, however, must take a closer look at the totality of circumstances to determine if the United States Trustee has met the requisite burden of proof. The Sixth Circuit Court of Appeals, in *In re Krohn*, 886 F.2d 123 (6th Cir. 1989), directs this Court to conduct a detailed analysis of this issue. Initially, this Court should determine if the future earnings of the Debtors could fund a hypothetical Chapter 13 Plan. Other factors articulated by the *Krohn* Court include: (1) whether the debtor enjoys a stable source of income; (2) whether the debtor is eligible for adjustment of debts through Chapter 13; (3) whether there are state remedies with the potential to ease financial problems; (4) the degree of relief obtainable through private negotiations; and (5) whether the debtors expenses can be reduced significantly without depriving the debtor of adequate food, clothing, shelter, and other necessitates. *In re Krohn*, 886 F.2d at 126-27.

In this case, the Court notes that the Amended Schedules I and J disclose a deficient income

3

of $692.60 per month. This amount is obviously not sustainable on either a short term or long term basis. In fact, as testified by Mr. Jones at the hearing, he has eliminated the 401k contribution of $383.33. The Court suspects that the remaining deficiency of approximately $309 is met on a month-to-month basis by the Debtors either deferring maintenance, in contradiction of the Congressionally mandated education they received, or otherwise tightening their belt.

The Court has undertaken an independent analysis of the Debtors' expenses and can find no glaring line item that would warrant a reduction and therefore make available monies to fund a Chapter 13 Plan. As to the first *Krohn* factor, therefore, the Court concludes that the Debtors in this case could not fund a hypothetical Chapter 13 Plan.

As to the second *Krohn* factor, it appears that although the Debtors currently enjoy a source of income, the stability of that income is suspect. First, Ms. Jones receives $1,082 for the home care of family members which may end. Second, the job of Mr. Jones is not stable or secure. Mr. Jones has so far survived a series of job cuts in his industry and his particular company. As Mr. Jones testified, he survived the most recent round of job reductions at his company, but it is unlikely that Mr. Jones will leave his current employment and go to another employer because of the competitiveness for open jobs and the lack of open jobs. Moreover, the Court notes that Mr. Jones testified that while his income may have nominally increased in the last 6 months, his share of costs for health insurance and other programs previously provided to him at a reduced charge have indeed increased. In short, Mr. Jones' net income has decreased.

As for the third *Krohn* factor, the Court notes that Mr. and Ms. Jones are indeed eligible for Chapter 13 relief, but for the reasons stated above a Chapter 13 Plan is not feasible.

Likewise, for the reasons stated above, it appears to this Court that the Debtors could not significantly reduce their expenses, which is the sixth *Krohn* factor that must be analyzed.

The Court now turns to analyzing the fourth and fifth factors of *Krohn*, namely whether the Debtors have available state court remedies or relief obtainable through private negotiations. At the hearing, the Court was impressed with Mr. Jones' knowledge of various methods to negotiate either forbearance or forgiveness of debt. As indicated earlier, the Debtors successfully negotiated a debt forgiveness of $47,000. From this testimony, the Court concludes that the Debtors have indeed availed themselves of all relief through private negotiations and as allowed by state law. From the nature of the testimony of Mr. Jones, this Court believes that if other avenues were available to the Debtors, they would take advantage of those opportunities.

Finally, the Court notes that there has been many reports of governmental, private, and third party programs to assist debtors, such as the ones in this case, in regard to their home mortgage obligation. While the Court accepts the good faith intentions of all parties in such programs, this Court has yet to hear, formally or informally, of any program that has given relief to bankruptcy debtors such as the individuals in this case. This Court has invited, and continues to invite, the report by any party of a successful workout of debt or a request to approve any type of resolution of a borrower with a lender. To date, however, this invitation remains unanswered. Accordingly, the Court concludes that the fourth and fifth *Krohn* factors are resolved in favor of the Debtors.

The *Krohn* elements identified by the Sixth Circuit clearly direct this Court to deny the Trustee's Motion to Dismiss. The Court, however, shares the United States Trustee's nagging concern that the Debtors, who have gross income of over $100,000, should not need to file Chapter 7. A partial answer to this nagging concern is that 10% of this income is merely reimbursement for

actual expenses incurred by Ms. Jones in caring for other family members. The remaining answer appears to be that these Debtors, like many today, have simply been caught in the unfortunate economic and real estate downturn of the times. As Mr. Jones testified, if he could sell the Debtors' current residence today he would to reduce his monthly mortgage payment. The sale of the house would not net any monies for any unsecured creditor, but would simply reduce the Debtors' expenses to a more acceptable amount so that the Debtors would not have to defer other needed expenses as taught in the debtor education received by the Debtors as a result of this Chapter 7 Petition. If nothing more, the Debtors have received the benefit of this education, so that they can hopefully combine that education with their Chapter 7 discharge and optimize the fresh start that they have earned in this case.

Accordingly, the United States Trustee's Motion to Dismiss is DENIED. The Court will enter an appropriate order.

**Signed on March 18, 2008**

                                        **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**